UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID A.L. MONTALVO,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>　　　　　　Defendant. | CASE NO. 3:15-cv-05809 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States Magistrate Judge, Dkt. 4). This matter has been fully briefed (*see* Dkt. 12, 13, 14).

After considering and reviewing the record, the Court concludes that the ALJ erred when considering the medical evidence as subsequent improvement with

medication is not inconsistent with marked limitations prior to taking the helpful medication.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, DAVID A.L. MONTALVO, was born in 1989 and was 22 years old on the alleged date of disability onset of October 1, 2011 (*see* AR. 226-27, 228-33). Plaintiff quit school after the 11th grade (AR. 38). Plaintiff last worked at a fast food restaurant, but quit when he started having panic attacks and wanted to try truck driving school (AR. 39-41). But again, he began to have panic attacks and did not finish the school (*id.*).

According to the ALJ, plaintiff has at least the severe impairments of "Attention deficit hyperactivity disorder, anxiety disorder, personality disorder, and depressive disorder (20 CFR 404.1520(c) and 416.920(c))" (AR. 13).

At the time of the hearing, plaintiff was living in an RV trailer on his parents' property (AR. 36).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 63-72, 73-82, 85-98, 99-112). Plaintiff's requested hearing was held before Administrative Law Judge Mary Gallagher Dilley ("the ALJ")

on April 29, 2014 (*see* AR. 31-60). On August 25, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 8-30).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) The ALJ erred in rejecting the medical opinions of R.A. Cline, Psy.D, William J. Chalstrom, PhD, and R. Renee Eisenhauer, PhD; and (2) The errors were not harmless (*see* Dkt. 12, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1)   **Did the ALJ err in rejecting the medical opinions of R.A. Cline, Psy.D, William J. Chalstrom, PhD, and R. Renee Eisenhauer, PhD?**

Plaintiff contends that the ALJ erred when rejecting a number of medical opinions, including opinions from examining and non-examining doctors (*see* Dkt. 12, pp. 2-5). Defendant contends that these medical opinions were rejected properly (*see* Dkt. 13, pp. 3-5).

When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81

F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *Andrews, supra*, 53 F.3d at 1041). However, all of the determinative findings by the ALJ must be supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)); *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

Dr. Cline examined plaintiff on November 16, 2012. She opined that plaintiff suffered from marked impairments in the areas of communicating and performing effectively in a work setting, completing a normal workday and workweek without interruptions from psychologically-based symptoms, and maintaining appropriate behavior in a work setting (AR. 340). The ALJ provided only "little weight" to Dr. Cline's opinion (AR. 22).

First, the ALJ found that plaintiff "was prescribed medication at that time, but was apparently not taking paroxetine [Paxil], which the treatment record shows successfully resolved his symptoms" (AR. 22 (*citing* AR. 338, 421-22)). However, there are two problems with this finding by the ALJ. First, plaintiff *was* taking paroxetine at the time of the evaluation by Dr. Cline (*see* AR. 338). As noted in Dr. Cline's report, cited by the ALJ in support of this finding, plaintiff "reports that he currently takes a daily anxiolytic (possibly buspirone or Paxil) and has for the last three or four months with limited effect" (*id*.). A treatment record from earlier that year demonstrates that plaintiff was started on Paxil (paroxetine) on March 14, 2012 (AR. 389). The second problem with this finding by the ALJ is that paroxetine was having only a "limited effect," so the record does not demonstrate that it was successfully resolving his symptoms (AR. 338).

It is possible that the ALJ meant to say that even though plaintiff was taking paroxetine (Paxil) at the time of Dr. Cline's examination, he was not yet taking fluoxetine (Prozac), which the record *does* demonstrate provided some relief from symptoms in July 2013, approximately eight months after the November, 2012 evaluation and examination by Dr. Cline (*see* AR. 424 (fluoxetine "was helpful for him")). This interpretation of the ALJ's rationale is buttressed by the ALJ's finding later in that paragraph that plaintiff's "treatment record shows that his symptoms did in fact improve when he took appropriate medication" (AR. 22). However, the ALJ's failure to credit fully Dr. Cline's opinion based on a finding that at the time of Dr. Cline's opinion, plaintiff was not taking a prescription that subsequently turned out to be helpful is not a legitimate basis for the rejection of her opinions.

Here, the record indicates that plaintiff was taking his prescribed medication at the time Dr. Cline provided her opinion, but that he was not taking fluoxetine, which appears to have helped his symptoms subsequently, after it eventually was prescribed (*see* AR. 338, 421). The fact that plaintiff was taking his prescribed medications, but that his doctor had as of yet failed to identify a prescription that would help alleviate his symptoms does not demonstrate that Dr. Cline's opinions about plaintiff's functional limitations at the time of her evaluation were inaccurate. This is not a legitimate reason for failing to credit fully the medical opinions of examining doctor, Dr. Cline.

In addition, Dr. Cline examined plaintiff on November 16, 2012. The treatment record cited by the ALJ in support of her finding that a subsequent prescription successfully resolved his symptoms is from December 20, 2013 (AR. 22 (*citing* 421-22)). Therefore, even if plaintiff's symptoms were successfully resolved in late 2013, he still may have been disabled in November 2012, and could have been disabled through December 2013. As plaintiff's alleged date of disability onset is October 1, 2011, plaintiff could have been disabled for over two years before his symptoms resolved. Indeed, on July 1, 2013, plaintiff's treating physician opined that his depression was "unresolved" and that the dosage of his medication should be increased (AR. 425). The fact that plaintiff's symptoms would be resolved approximately a year in the future is not a legitimate basis for the failure to credit fully the contemporaneous opinions of examining physician Dr. Cline at a time when they were not yet resolved.

Defendant also contends that the failure to credit fully the opinion of Dr. Cline is proper because Dr. Cline opined that plaintiff would be limited for maximum of 12

months and in order to meet "the duration requirement," an impairment must last for at least 12 months (Dkt. 13, p. 3). The fact that Dr. Cline opined that plaintiff could be limited for 12 months indicates that she opined that the impairment could meet the duration requirement. This is not a legitimate basis for the failure to credit fully her opinion.

On May 15, 2013, Dr. Chalstrom examined plaintiff and provided his opinion (*see* AR. 378-82). Dr. Chalstrom observed that plaintiff "had a sad affect, which was congruent with his stated mood," of being depressed and anxious (AR. 380). Dr. Chalstrom diagnosed plaintiff with panic disorder with agoraphobia; generalized anxiety disorder; depressive disorder, NOS; and personality disorder, NOS, with cluster C traits (*id*.). Dr. Chalstrom opined that plaintiff "would have difficulty getting along with supervisors, coworkers, and especially the general public, in a work situation" (AR. 382). Dr. Chalstrom also opined that plaintiff "would have difficulty responding appropriately to changes in a workplace" (*id*.).

The ALJ provided only "some weight" to the opinions of Dr. Chalstrom (AR. 22). The reason provided by the ALJ for his failure to credit fully the opinions of Dr. Chalstrom was that plaintiff's "symptoms did improve with appropriate treatment" (*id.* (*citing* AR. 421-22)). Again, the record cited by the ALJ to support her finding of improvement of symptoms is from December 20, 2013 (*see* AR. 22, 421-22). As Dr. Chalstrom provided his opinion on May 15, 2013, the fact that plaintiff's symptoms subsequently improved over seven months later is not a legitimate basis for the failure to reject the opinions of Dr. Chalstrom regarding plaintiff's functioning at the time of his

evaluation. Although it may be true that plaintiff's symptoms improved to the extent that he was not disabled in December, 2013, this fact does not demonstrate that plaintiff was not disabled in May of 2013.

Similarly, the ALJ rejected the medical opinion of Dr. Eisenhauer on November 12, 2012, provided after a review of some of plaintiff's records (AR. 22). Although Dr. Eisenhauer opined that plaintiff suffered from marked limitations in his ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal workday and workweek without interruptions from psychologically-based symptoms, the ALJ found that this opinion "is not consistent with the claimant's most recent treatment records, which indicate that he has had successful treatment with appropriate medication" (AR. 22 (*citing* AR. 421-22)). The opinion that plaintiff was suffering from marked limitations before he received successful treatment with appropriate medication is not an inconsistency. Plaintiff may have experienced relief from his symptoms in December 2013, but this is not inconsistent with an opinion that as of November 12, 2012, plaintiff was experiencing marked limitations. Therefore, the Court concludes that the ALJ's finding of an inconsistency between marked limitations in November 2012 and an improvement in symptoms in December 2013, after receiving a different prescription, is not a finding based on substantial evidence in the record as a whole.

Finally, although not explicitly stated, implied in the ALJ's reasoning is a finding that because fluoxetine resolved plaintiff's symptoms in late 2013, that this prescription necessarily would have resolved his symptoms previously, had it been prescribed earlier

ORDER ON PLAINTIFF'S COMPLAINT - 8

by his treating physician. However, not only is this not the factual circumstance presented herein, but also, any such finding would be speculation and not a finding based on substantial evidence in the record as a whole. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22 (an ALJ may not speculate).

The Court also notes that there appears to be an error in the treatment record (AR. 422). On December 20, 2013, the treatment record indicates that plaintiff's "symptoms responded well to the paroxetine that he had been taking earlier this fall," and that this treatment would be restarted (*id.*). However, this may be a dictation error as the record demonstrates that in the fall plaintiff had been taking *fluoxetine*, not paroxetine, which "was helpful for him," although it appears that he was not yet receiving sufficient symptom relief as he thought that "a higher dose might take away more of his depression symptoms and his anxiety" and his treating physician opined that his depression was "unresolved" and therefore increased his dosage of fluoxetine (AR. 424-25). In addition, paroxetine had been described as having a "limited effect" on plaintiff's symptoms (*see* AR. 338). Finally, in the treatment record that (perhaps erroneously) indicates that the paroxetine that plaintiff had been taking in the fall had helped plaintiff symptoms and was to be restarted, plaintiff's medications list includes fluoxetine (and does not include parozetine), and the plan indicated that a prescription for fluoxetine would be written (*see* AR. 421, 422). Perhaps the only reasonable interpretation of this record is that the physician meant to say (or did say and was mis-transcribed) that plaintiff was going to restart treatment with fluoxetine, as his symptoms had responded well to the fluoxetine. As fluoxetine is what she actually prescribed, and as this is the prescription that plaintiff

ORDER ON PLAINTIFF'S COMPLAINT - 9

had been taking in the fall, and appears to be the only prescription that helped plaintiff's symptoms, this appears to be the most logical interpretation of the record. If the ALJ found this record to be ambiguous, or following remand of this matter finds this record to be ambiguous, she had a duty to develop the record on this issue, and re-contact the physician if necessary. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (*quoting Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam))) (The ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered'"); *see also Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (the ALJ's duty to supplement the record is triggered if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence).

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ erred when evaluating the medical evidence. All of the medical evidence should be evaluated anew following remand of this matter.

(2)  **Were the ALJ's errors harmless?**

Plaintiff contends that the ALJ's errors are not harmless because the residual functional capacity ("RFC") assessment did not include all of the limitations opined by Drs. Cline, Chalstrom and Eisenhauer (*see* Dkt. 12, pp. 4-5). Defendant contends that plaintiff has not shown that the errors are harmful, but does not offer any explanation as to why the ALJ's failure to include the opined limitations into plaintiff's RFC was harmless (*see* Dkt. 13, p. 5).

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (*citing Stout,* 454 F.3d at 1055-56). In *Marsh,* even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (*citing* 20 C.F.R. § 404.1527(d)(1)-(3)).

Here, there were various opinions from Drs. Cline, Chalstrom and Eisenhauer that were not included into plaintiff's RFC, such as that plaintiff suffered from marked limitation in the areas of communicating and performing effectively in a work setting, completing a normal workday and workweek without interruptions from psychologically-based symptoms, and maintaining appropriate behavior in a work setting (AR. 340); and that plaintiff "would have difficulty getting along with supervisors, coworkers, and especially the general public, in a work situation" and "would have difficulty responding appropriately to changes in a workplace" (AR. 382; *see also* AR. 15). The ALJ relied on

this incomplete RFC when providing a hypothetical to the vocational expert, on whose testimony the ALJ relied when making the ultimate determination regarding disability (*see* AR. 24-25). A reasonable ALJ when fully crediting this opinion evidence could have made a different determination regarding disability. Therefore, the Court cannot conclude with confidence that "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh*, 792 F.3d at 1173 (*citing Stout,* 454 F.3d at 1055-56). Therefore, the errors are not harmless.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 25th day of April, 2016.

J. Richard Creatura
United States Magistrate Judge